*284 OPINION OF THE COURT
Anthony J. Ferrara, J.
Background
This case is emblematic of the problems New York City faces in enforcing the rules against unlawful street vending. The defendant stands before this court charged with failure to disclose the origin of a recording in the second degree (Penal Law § 275.35). He seeks dismissal of the charge, arguing that the facts alleged in the complaint are facially insufficient.
Within the last year he has been charged with similar crimes on seven other occasions. On January 15, 2006 he was arrested and charged with trademark counterfeiting in the second degree (Penal Law § 165.72) and failure to disclose the origin of a recording in the second degree (Penal Law § 275.35). He disposed of that prosecution through a guilty plea at arraignment to disorderly conduct (Penal Law § 240.20) and was sentenced to perform one day of community service. On May 30, 2006, he was arrested and charged with evading payment of cigarette tax (Tax Law § 1814 [a] [1]) and possession and sale of unstamped cigarettes (Tax Law § 1814 [d]). Again, he disposed of the prosecution through a guilty plea at arraignment to disorderly conduct (Penal Law § 240.20) and was sentenced to perform four days of community service. The defendant is also charged in five open cases. On June 23, 2006, in front of 307 West 125th Street the defendant received summonses for unlicensed general vending (Administrative Code of City of NY § 20-453) and for no tax identification (Tax Law § 1817 [d]). Under docket number 2006NY047590 the defendant is charged with failure to disclose the origin of a recording (Penal Law § 275.35) and unlicensed general vending (Administrative Code § 20-453) in that, on July 16, 2006 at about 1:20 in the afternoon in front of 309 West 125th Street he allegedly displayed and offered for sale DVDs and CDs. Under docket number 2006NY056527 he is charged with unlicensed general vending (Administrative Code § 20-453) in that, on August 21, 2006, at about 5:00 p.m. at 300 West 125th Street he allegedly displayed and offered for sale 81 CDs without a license. Finally, under docket number 2006NY067822, the defendant is charged with obstruction of governmental administration in the second degree (Penal Law § 195.05), resisting arrest (Penal Law § 205.30), unlicensed general vending (Administrative Code § 20-453) and disorderly conduct (Penal Law § 240.20 [1]), when, on October 5, 2006, *285 just after 6:00 p.m. at 300 West 125th Street, he allegedly fled from an officer who observed the defendant exchange CDs and DVDs for a sum of United States currency. The flight allegedly occurred when the officer approached to ask whether the defendant had a license.
Defendant’s alleged conduct must be viewed in the context of the overall problem of the illegal sale of goods. In November 2004, the New York City Comptroller issued a report entitled Bootleg Billions: The Impact of the Counterfeit Goods Trade on New York City. In the report, the Comptroller estimated that during 2003 consumers spent $23 billion on counterfeit goods in New York City depriving the City and its residents of about $1 billion in tax revenue (see Bootleg Billions at 1). The report also stated that, despite the fact that about 2.5 million illicit sound recordings were seized in New York City in 2003, approximately 17 million illicit sound recording “made their way undiscovered to the streets of New York for sale to the public” (see Bootleg Billions, at 12, appendix A). Based on this number, a $5 street price, a $10 wholesale price and a $17 average retail price, New York City and its residents lost $39.4 million in 2003 taxes from the sale of illicit sound recordings (id.).
More recently, a New York Times article reported that although in the past two years the New York City Police Department had seized over $50 million in counterfeit goods and shut down 15 buildings used by counterfeiters, thousands of people, tourists and New York City residents alike, continue to flood areas like “Counterfeit Alley,” a strip of Broadway a few blocks south of 34th Street, because it is a “poor man’s shopping mall, an admittedly seedy — and therefore affordable — alternative to the gleaming, teeming Herald Square stores a few blocks away” (Confessore, No-Name, Brand-Name or Phony: It’s All Here, New York Times, Oct. 9, 2006, section B, col 1, at 1).
Facts of This Case
The information in this case alleges that, on June 12, 2006, at about 2:30 in the afternoon at the corner of West 125th Street and 8th Avenue, a police officer observed the defendant remove the plastic bag that contained garbage from a trash can, and pull out a second clear plastic bag from underneath it, that contained 141 CDs. The names and addresses of the actual manufacturers were not present on these CDs. The information further alleges that the defendant stated in substance to the officer: “I am not selling. I am going home.” By motion dated June 22, 2006, defendant has moved to dismiss the information *286 as facially insufficient and for various other relief. The defendant contends that his own statements, coupled with his possession of 141 CDs in a plastic bag, cannot support the essential element of intent to offer the CDs for sale. The People filed their response to this motion on October 10, 2006.
Defendant’s motion is decided as follows:
Motion to Dismiss for Facial Insufficiency
An information is facially sufficient if the factual section contains allegations of an evidentiary nature demonstrating reasonable cause to believe that the defendant committed the offense charged (CPL 100.15, 100.40 [1] [b]). The facts must be supported by nonhearsay allegations which establish, if true, every element of the charged offense (CPL 100.40 [1] [c]; People v Alejandro, 70 NY2d 133, 135 [1987]). The standard for pleading a prima facie case is lesser than the heavy burden of proof beyond a reasonable doubt required at trial (see People v Henderson, 92 NY2d 677, 680 [1999]) and the factual allegations should be given a fair and not overtly restrictive reading (see People v Casey, 95 NY2d 354, 360 [2000]). When assessing the facial sufficiency of an accusatory instrument, a court must view the facts in the light most favorable to the People (see People v Gonzalez, 184 Misc 2d 262 [App Term, 1st Dept 2000], Iv denied 95 NY2d 835 [2000]). However, conclusory allegations are insufficient (see People v Dumas, 68 NY2d 729 [1986]). More importantly, a court need not ignore common sense or the significance of the alleged conduct in determining facial sufficiency (Gonzalez, 184 Misc 2d at 264).
A person is guilty of failure to disclose the origin of a recording in the second degree when,
“for commercial advantage or private financial gain, he knowingly advertises or offers for sale, resale, or rental, or sells, resells, or rents, or possesses for such purposes, a recording the cover, box, jacket or label [of which] does not clearly and conspicuously disclose the actual name and address of the manufacturer or the name of the performer or principal artist” (Penal Law § 275.35).
Article 275 of the Penal Law was created in 1978 when the Legislature transferred offenses that previously had been in the General Business Law to the Penal Law to punish criminally the illegal traffic in unauthorized recordings (see Donnino, Practice Commentary, McKinney’s Cons Laws of NY, Book 39, Penal Law art 275, at 245). The Governor noted *287 in his memorandum approving the 1978 legislation that representatives of the recording industry estimated that more than $11 million worth of unauthorized recordings were sold in New York State each year depriving performers and the recording industry of their rightful compensation (id.). In 1990 and again in 1995, the Legislature expanded the scope of article 275 and increased the severity of the punishment for those who traffic in substantial numbers of illicit recordings (see id. at 246-247). As previously noted, despite these legislative enhancements, the problem persists with a 2003 estimate of $289 million worth of lost retail sales in New York City. (See Bootleg Billions, appendix A.)
A court may consider many factors when evaluating whether an accusatory instrument alleges facts sufficient to infer defendant’s intent to offer for sale illicit goods. These factors include the nature and number of goods offered, the manner in which the goods were displayed, the defendant’s interaction with the public as well as the goods, the length of time that the defendant engaged in the conduct, and the time and place of the alleged conduct (see People v Montanez, 177 Misc 2d 506, 510-511 [Crim Ct, NY County 1998]; People v Abdul, 157 Misc 2d 511, 514 [Crim Ct, NY County 1993]; People v Diouf, 153 Misc 2d 887, 890 [Crim Ct, NY County 1992]; People v Sylla, 154 Misc 2d 112, 115-116 [Crim Ct, NY County 1992]). The accusatory instrument does not necessarily have to allege that the defendant was overheard verbally offering the goods for sale (see Sylla, 154 Misc 2d at 116) or that the defendant aggressively solicited business from passersby (see Montanez, 177 Misc 2d at 510). In this case, a reasonable inference from the nature and number of goods possessed (141 CDs), the fact that the defendant removed a second bag containing the CDs from under a trash bag in a trash can, and his statements, at 2:30 p.m., that “I am not selling; I am going home,” was that he was done selling for the day and that he was taking his inventory of illicit merchandise home. A reasonable trier of fact may conclude that the defendant possessed the requisite intent to offer the CDs for sale because he used West 125th Street as his storefront and the trash can as a storage bin for his inventory (see People v Cisse, 171 Misc 2d 185 [Crim Ct, Queens County 1996] [allegations that defendants had 143 videocassettes in their possession and displayed on a street comer for sale were sufficient to charge defendants with the crime of failure to disclose origin of a recording in the second degree]). Defendant’s motion to dismiss the information as facially insufficient is denied.
*288 Motion to Suppress the Physical Evidence
Defendant’s motion to suppress any physical evidence seized from him at the time of his arrests is granted to the extent that a Mapp/Dunaway hearing is ordered.
Motion to Suppress Defendant’s Statements
Defendant’s motion to suppress his statements to the arresting officer is granted to the extent that a Huntley/Dunaway hearing is ordered.
Motions to Preclude Unnoticed Statements and Identification Testimony
The voluntary disclosure form filed by the People shows that the People do not intend to offer any identification testimony at trial. The defendant’s motion to preclude unnoticed statement and identification evidence is denied as premature with leave to renew in the event the People attempt to offer unnoticed statements or identification testimony.
Sandoval Motions
Defendant’s motions to preclude cross-examination as to prior convictions or uncharged bad acts are referred to the trial court.
The People are reminded of their continuing obligation to supply Brady material.
To the extent not addressed herein, the remainder of the motions are denied.